Case No. 24-5852, Zachary Martin v. Polaris, Inc., et al., argument not to exceed 15 minutes per side. Mr. Collins, you may proceed. Good morning. Good morning. Richard Collins on behalf of Appellant Zachary Martin. If the Court please, I'd like to reserve four minutes for rebuttal. Very well. May it please the Court, this panel should reverse and remand this case for a new trial because the District Court abused its discretion when it excluded plaintiff's product safety expert from testifying as regards to the very thing at issue in this case, which is his opinion that the subject off-road vehicle should have been designed to include a passive restraint barrier. The Tennessee Product Liability Act defines or imposes strict liability for injuries caused by a defective or unreasonably dangerous product, and here we're talking about an unreasonably dangerous product. This is the prong of the Tennessee Products Liability Act that we're concerned with, and there's two ways that you go about doing that. The TCA 2928.102.8, which defines unreasonably dangerous, contains two tests, prudent manufacturing test or ordinary consumer expectation test. They're not mutually exclusive nor mutually inclusive, but depending on the product and the issue, ordinary consumer's expectations just really don't matter, and you're stuck with the prudent manufacturing test. I would submit at bottom that type of case because we're not talking about something an ordinary consumer could really form an expectation about. We're talking about rollover events and what's necessary to keep upper extremities in a vehicle in a dynamic situation. So that was plaintiff's theory that a reasonably prudent manufacturer would not have put this off-road vehicle on the market without these passive restraints, whether that's a net, higher doors, something to keep going as high as the shoulder, which would prevent it. Again, we have an expert on this issue, as you really must when you're pursuing a case under prudent manufacturing test. For this particular argument, do the modifications to the RZR, does that matter for this particular argument? No. No, Your Honor. They do not, and I'll come back to that, but . . . I'm curious. I get they don't matter. Did you sue Batcave Customs? No, Your Honor. I don't believe so. The answer is no. No. Why not? They're the ones who made the modifications. Well, the modifications weren't the problem. The problem was the lack of passive occupant barriers that would prevent the upper extremity, arms, hands, from leaving the vehicle, and this particular vehicle just had a handhold, so a T-bar that you hold onto. Well, that's well and good in certain scenarios, but not in these types of dynamic situations. I think, going back to the difference between what is this vehicle we're talking about, we all know like utility UTVs. I saw half a dozen probably yesterday on I-75 as I'm going by these horse farms. They're slow-moving. They're made to go from point A to point B, throw a hay bale on it and go. This vehicle is called a recreational off-road vehicle. It's made for speed, thrills, and adrenaline, and it has no utility other than fun. The rollover risk, you have rollover risk in any vehicle, and it goes up with the UTV, of course, but the rollover risk for these ROVs, as we call them, is extremely high. Even the Consumer Product Safety Commission really looks hard at these, and that's one of the issues here, but I think, really, all problems in this case flow from the exclusion of Dr. Kress, plaintiff's expert. It essentially gutted the case, eliminated plaintiff's ability to pursue the prudent manufacturer test, and then all these other problems that we cite in our briefs flowed there from. The problem with Kress is he gives broad descriptors and not specific things in other courts of law that excluded him for just this exact reason. The same excerpt, same thing, same exclusions. Well, with respect, I disagree. That's certainly what the district court says. He doesn't specify what the design problem was, so we're just going to exclude him, but he does in three different courts. He didn't even investigate the RZR itself until the day before trial, this particular one. He studied all the measurements and everything, and when the defendant moved under Daubert to exclude him, they attack his qualifications and the reliability, the methodology, and faulted him for not taking measurements and looking at all these things, which he was able to do by what he calls photogrammetry and other scientifically acceptable ways of analyzing this without actually measuring it. That was the attack, but the district court doesn't really go there. The district court just goes with, well, he just doesn't specifically identify the design defect, but he does, and that design defect is the lack of a passive, meaning non-participatory occupant restraint barrier, and it could be a net, which, in fact, earlier models of this very same vehicle had. Is that the problem? It could be a net. It could be something else. I mean, is the problem with this testimony it's not definitive enough? There's too many different options? Well, I don't think so. What I think is, when I say it could be a net, it could be a type of... I know, but if the product is defective, it's not, it could have been, it is defective because of this. You don't qualify at that level. It's defective because, well, it's unreasonably dangerous because it lacks a passive occupant barrier, restraint barrier that holds the extremity in the vehicle. His opinion was it should have been what? It should have been, well, he gives a number of different options. Go back to the net from Judge Griffin's question. When he points to the net, he says Polaris had this as an option, but visibility wasn't... I mean, there were other problems with the net that came. Well, that's for juries to decide. I mean, he proffers that... The expert has to say that this is the defect. There are numerous defects. This is one of them. And it's just the qualification here that's somewhat troubling and the lack of foundation. I mean, that's what Dawbert requires and 702 does. He's got to have a good foundation for his opinion. His opinion is thorough in the sense that he relies heavily on the Consumer Product Safety Commission who did extensive studies. And, in fact, we're trying to regulate this to require this passive occupant restraint barrier. That report didn't even get passed. Right, it didn't get passed because the defendant and others in the industry lobbied. Sure, but it's not out there. I get that someone's looking at it. I get that we can all look at these things and say they're unsafe. I've ridden them. I understand that they're unsafe. I've been on them. But the reality is that the way I think about it is these aftermarket changes are made. Someone needed to inspect them and say those weren't the problem. He didn't inspect them until the day before trial. He pointed to generalized things, not a specific thing that could, as Judge Griffin just pointed out, like this had to be done to make it safe. Well, let me, I think you stated that he didn't roll out the modifications until the day before. That's not correct. I mean, that's the one opinion that Judge Collier permitted him to have. So this expert who can't testify to what he says renders this vehicle unreasonably dangerous, the lack of an occupant restraint barrier, he's not allowed to testify to that or the basis for that opinion, but he's allowed to testify that these modifications wouldn't have made a difference. They didn't enhance the injury or whatever. That's what he was allowed to testify to. But he was hamstrung. Explain to me why he was allowed to testify to that if he didn't investigate it, if he didn't look at it until the day before. Well, again, the methodology used was sound. And Judge Collier didn't have a problem with the methodology using the schematics and various images and lining them up and doing all this. He explains all this in his reports and in his deposition. That's why. Now, the inspection of the vehicle the day before was just because they brought it to trial to show the jury. And so he got an opportunity to actually look at it. But it didn't matter because, I mean, all these, it's not like this was something that he couldn't analyze in any other way than to actually inspect it. He could recreate it. Judge Griffin, to your point about should he have some more specific, should he say, for example, it's a net, it's a net. And the answer is no, the Tennessee law doesn't require that level of proof. Now, the state of technological and scientific advancement is important under the prudent manufacturing test. And alternative feasible designs are as well. But that's just one of several factors. The design defect is the lack of a passive restraint. Isn't there also, I mean, a problem with causation that their theory is that the aftermarket changes the roll bar by having a lower roll bar, that that lower bar, that aftermarket change is what that bar hit the arm and caused the amputation of the arm, that the standard roll bar would not have impacted the arm. And therefore, even if you had a defect, even if there should have been a net or something here, the defect wouldn't have caused the injury here because the standard roll bar, it would never have hit the ground anyway. I mean, I know this goes into the scratch mark evidence issue as well. But if the scratch mark evidence comes in and it shows that the product as originally designed would not have injured him, it doesn't really matter whether there was a defect here, does it? I am out of time. I'm going to answer. Here's the problem. Whether or not the modification was factored in, or he would have suffered this injury with the OEM. Well, that was the theory, wasn't it? Right, right. Well, that's our theory and it's supported by expert testimony. Now, they come in at trial with an undisclosed opinion from their expert with their scratch. And I don't want to get into the gory details, but how do I rebut it? Their evidence comes in that the product as originally designed with that roll bar would not have impacted the arm. The fact that you don't have a net here doesn't make any difference, does it? It does because the arm doesn't come out. It comes out, but it's not going to hit the ground. That's the factual question. We can't even get to the point of rebutting this undisclosed opinion about scratches because we can't testify that a reasonably prudent manufacturer would have not put this on the market without a restraint system that would not have allowed the upper extremity to come out, period. But to answer your question, we disagree. And the record demonstrates, and there was proof at trial and testimony about whether or not the modification mattered. And we say it doesn't, they say it does. This is the stuff of juries. But we can't even fully rebut that because our prudent manufacturer is gone. I mean, the whole test is out the door because it was excluded 11 days before trial, the morning of a pretrial conference. This Court should reverse and remand for a new trial. Thank you. All right. Thank you. Good morning. Good morning. May it please the Court. Todd Presnell along with Tim Rodriguez on behalf of Polaris. If I may begin discussing Rule 702 and Judge Mathis specifically to your question, do the modifications matter? The answer is absolutely yes. If you look at Mr. Brady's testimony in particular, who was a corporate representative for Polaris, and the expert testimony from Mr. Rogers, it shows that these modifications had changed drastically the product that we sold. And under Tennessee Product Liability Act, the assessment is, does a defect exist at the time we sell it, manufacture and sell it? The testimony is undisputed that the product at subject razor, RZR, at the time of the incident had bigger tires. The seat base had been lowered by six inches. But isn't that his point is that, I agree with everything you're saying, but his point is, had you not kept my expert out, we could have made the case that not only did those modifications not matter, but that Polaris should have done more. I mean, that's his whole theory of the case, right? His theory is, that's the argument, Judge, is that the exclusion of two of Dr. Kress's three opinions is detrimental to his case and makes it hard to prove a product's liability action, and that's true. So the question before the court is, was the district court right in applying the Rule 702 factors? And these modifications matter because not only the seat base was lower, but we had an entire new ROPS or roll cage on there. And from an occupant retention standpoint, which is the issue here, this was no longer really our vehicle. So then it is an incumbent upon the plaintiff's expert to look at this vehicle as we That is his point. He's saying, we looked at the schematics as you manufactured it. I ruled out that the modifications caused the problem. I looked at the schematics as you manufactured it, and I found that without the restraint, it was defective. And that latter part was excluded, and that's his complaint. I'm simplifying it, but that's his complaint. Yes, but the two things there. First, this concept of a net is nowhere definitively in Dr. Kress's reports. I think as Judge Griffin pointed out here, the report actually says if Polaris believes a net would be sufficient, then maybe they should make it standard. Polaris had some reference to a net somewhere in one of their manuals or something, correct? There is, yes, but let's be clear about what a net is because there's some confusion, perhaps. The cabinet phrase that you see in Polaris's manual is completely different from a so-called window net. This RZR did not have that cabinet because, pursuant to the ROVA standards to which we designed and manufactured this vehicle, this vehicle had doors. So we did not need a cabinet. I believe the theory now on appeal is, well, it should have had, even in addition to the door that was on the RZR, it should have had sort of a window covering. But what Dr. Kress, of many things he did not do, is decide, well, if we had made a window net, how do we know it would have kept the arm and limb inside? Didn't he also say there should be a side restraint? I thought there were two theories. One was the net, one was some kind of side restraint. Judge, it is confusing. And respectfully, they conflate a side restraint with a window net. A side restraint or shoulder-type barrier is more of a hip-shoulder issue, not an arm-limb issue. I go back to Mr. Brady's testimony where he explains that the occupant retention system here contains four zones. Zone one is foot, zone two is the shoulder-hip, zone three, which is that issue here, is the arm and hand, and zone four is the head. So they conflate this shoulder-hip bolster bar, which the RZR contains in addition to the door, with this concept of arm and limb. So that is different. Going back to the window net, applying Rule 702A's factors, how is that a defect? How is there any proof that that's a defect? For example, had we made a window net that fit the RZR as we designed it, manufactured it, and sold it, it would have even still applied to this modified RZR when it didn't have our roll cage on it. Here's what he says. A reasonable, safe design should have incorporated a physical side retention barrier and design features to adequately reduce the probability of entrapment of a properly belted occupant's arm between the vehicle and the terrain in the event of a rollover. I don't think that, that doesn't sound like a window to me. It's not. That's right. So he is saying that there should have been a physical side retention barrier. I agree with you. The next sentence is, if Polaris believes that their optional net is such a design feature, then they should have used it. Right. So I think the net thing is kind of beside the point. But what about the side retention barrier? There is no opinion from Dr. Kress stated with any specificity that there should have been any additional barrier. What is this? A reasonably safe design should have incorporated a physical side retention barrier. He does not say what it is. I agree with that. That's part of the problem with his report. But I'm just wondering, like you're saying he's not saying anything. He did say the side retention barrier. He just doesn't. He doesn't say what that is. And that's because he did not. It's just a conclusion. And that's the problem. And Daubert requires more than conclusions by experts. Yes, it's a conclusion. But not only that, it's a conclusion about off-road vehicles in general. And that's what the district court picked up on. And when the court applied the 702 factors, he looked at that and said, what exactly is wrong with this particular product, with this 2019 RZR? And there is nothing in his reports that gives us any indication other than a vague reference to window nets that has been somewhat amplified in the appellate briefing only. But looking back at the reports, we can see it's just simply not in there. Not only that, he then does not go through a 702B, C, or D type of factors either. He doesn't tell us. Can I ask you about the scratch mark? Because you never rule 26E requires you to supplement your report, even after depositions. And from what I can find, and as he points out, you never did update it. I mean, that seems like error to me. Judge, I respectfully disagree. I mean, you're faulting him for his report. You don't even have it in your report. Judge, first of all, the concept of scratch evidence is a fact that the expert, Mr. Rogers, viewed when he inspected the RZR. The opinion is causation. And that opinion was disclosed. In his original report, his only report, Mr. Rogers specifically set forth what these modifications are. At the deposition. But the scratch mark evidence wasn't disclosed in that initial report, was it? The scratches on the roll cage was not mentioned in his report. That is an observation. The opinion was that it was all about the modifications and how the modifications affect. But the scratch mark was the evidence underlying that opinion. No, I disagree. The opinion was that all the modifications, the seat lowering, the tires, the new roll cage, changed that occupant retention system. You see a reference in there to lowering the belt line, which means you're lowering the passenger in this envelope, if you will, of protection. What then happened at the deposition is that Mr. Martin's counsel went into quite some detail about tell me about your opinions when you're talking about the modifications, tell me about the opinions. And he specifically said, are you talking about causation? In other words, had our original. That relates to the scratch mark evidence. Obviously, under Rule 26, you have to disclose your expert's opinions. But you also have to disclose the facts underlying those opinions in the report, right? The facts, yes, sir. Okay. And that's what we're talking about. He's saying you didn't disclose sort of the scratch mark evidence, that fact. In a report. Not in a supplemental report does he mention scratch evidence. Dr. Kress disclosed his causation opinion late, being on July 1, 2024, six weeks before trial. Sure, but then you have the depo, July 24th. And then you could, Rule 26 requires that you update and file a supplemental report. Yes, Judge. Under Rule 26, there is a 30-day deadline. At this point, we are barreling toward trial, just a couple of weeks away. We are rebutting, as the district court found, we are rebutting this new opinion that Dr. Kress disclosed on July 1. We moved to exclude that based on unreliability and untimeliness, and the district court denied that and let that opinion in. He then allowed Mr. Rogers to rebut that late disclosed opinion at trial. And the concept of notice and an ability to challenge has always been present. Mr. Rogers testified at length in his deposition about the causation here and why the new roll cage and ROPS caused this issue. Yeah, there's no question he testifies about it in his deposition. So maybe your argument is, I suppose, that your best argument is that it's harmless because it was all disclosed. It was all disclosed, and it all happened in the flow of trial. But certainly we briefed the issue of, just like the district court allowed Dr. Kress to testify about a late disclosed causation opinion, going through those five factors of not complying with any kind of disclosure obligation here in terms of, is there a surprise? Is there an opportunity to cure the surprise? Does it disrupt the trial? Is there any kind of serious harm or prejudice here? The district court found that Dr. Kress's late disclosure would be allowed under those factors, and I submit to you the same would be true for Mr. Rogers, and we outlined that argument and those elements in the brief. And it would be harmless here. The plaintiff's counsel had plenty of opportunity to come back and quiz Mr. Rogers about it, having deposed him. Dr. Kress testified about a causation opinion without getting into it at all. They had a rebuttal opportunity that they didn't take. So this was all, as the district court found, he allowed a late opinion on causation and then allowed Mr. Rogers to rebut it, and that's within his discretion, and we submit that it is correct. I'll just sum up by saying the standard of review here is one of abuse of discretion on 702, and the district court gets a high degree of deference here. To the extent that Mr. Martin here is arguing for a lenient presumption of admissibility standard or concepts of these issues go to the weight, not the admissibility, we respectfully disagree. Rule 702, in particular, its amendments, make clear that this is a preponderance of the evidence standard that the court must apply in its gatekeeping role. The district court here did that. Mr. Kress's opinions do not hold up under 702, and the district court properly excluded it. So unless there are any other questions, we ask that you affirm and overrule. I've got a question about the proposed Consumer Product Safety Commission rules. The district court said that they can't come in for all purposes, but the rules could come in to the extent that the evidence demonstrates actual notice to defendants of the defect in this particular vehicle. Do you agree with that ruling that the proposed rules could come in for that limited purpose? We disagreed with that at the trial court level, Judge. We did not appeal that issue because that evidence never came in. None of the documents submitted provided any type of notice to police. Did they try to admit the evidence for that limited purpose? They attempted to, yes. And you objected? Yes. What was the ruling of the district court then? The ruling was that there was no proper foundation, and some of the documents were not even proven to be authentic. It's a little unclear from the record what documents they are appealing now. It appears from their brief it is the CPSC documents at 84-1, record 84-1 and record 84-4, and neither of those mention Polaris. Neither of those mention this particular product at issue. This is governmental debate that never made it to a formal rule or regulation. In fact, if you look at record 117-3, you can see that that proposed rulemaking was the recommendation was to withdraw it, and there was never any regulation. So the court was correct in applying rule 403 to say that those would be prejudicial, confusing to the jury, particularly when they don't mention Polaris and do not mention a product at issue. So the district judge got that correct under rule 403. All right. Thank you. Any further questions? Thank you. All right. We have four minutes of rebuttal. Yes, thank you. Just as plaintiff was unable to satisfactorily rebut Mr. Rogers' testimony about scratches, these undisclosed opinions, without Dr. Kress' principal opinion on side restraints, so too goes these Consumer Product Safety Commission rulemaking exhibits because the objections were to foundation, foundation, foundation, and they were granted over and over again because, again, there was no foundation because the opinions were excluded. And so that's my point with respect to these documents not making their way in, not going to the notice issue because they would come in and evacuate. Kress' opinions were that the product was defective because it did not comply with proposed regulations. Is that what his opinion was? No, Your Honor. His opinion, that was one basis on which he concluded, supporting his opinion that the propensity of rollover here is so high that we have to have these passive restraint barriers, whether that is a net or not. And now to this modification, the Tennessee Product Liability Act answers this in Section 2928.108. This is a jury question, and a modification, even if let's assume that the modification actually did enhance the injury or that the injury wouldn't have occurred without the modification. Well, if the modification is foreseeable and not abnormal, then the manufacturer is still on the hook. It was a jury question. It is a jury question. The jury did decide the modification issue, did they not? They just ruled that their verdict was that the product is not unreasonably dangerous. Right, right, but that was an argument as the modification was. That was an argument, but we weren't able to actually rebut it without our principal conclusion that the side restraint, passive side restraint would have prevented the injury regardless. But I make this point just so that the court doesn't get too, doesn't labor too much on this issue of did the modification matter or not. I mean, that's still a jury question, and if it was foreseeable, and it was because, and the record demonstrates this in various places, that, I mean, this is what, these are like little hot rods. I mean, it's kind of like you never see a Harley Davidson without a bunch of customization. And it's the same thing here. It's all about, you know, tricking it out and making it look cooler. And so that's normal, and they're designed to do that. And if they don't want that done, if it's unsafe, then you can design it in a way that prevents that. And, again, Chris's, you know, fundamental opinion is that this vehicle should have had a passive occupant restraint barrier structure that would have prevented the upper extremity from coming out of the vehicle. It had one in prior years, and that was the net. It doesn't have to be a net. But, again, Tennessee law doesn't, the pretty manufacturer test according to Tennessee Supreme Court, you know, there's several factors that are weighed. You know, the usefulness and desirability of the product, the safety aspects of the availability of substitute product that would meet the same need, you know, it's the odd. I mean, you bear the burden of proposing a safer alternative, right? You can't just say they should have done something differently, figure it out. You have to actually say what the, or your expert has to say, what the safer, feasible alternative is. Am I wrong about that? I'm not willing to concede that as such. I think that that's one factor, and I think that, you know, you would go to trial at your own peril if you don't have the ability to point to a feasible alternative design. But we do that. But I don't know that I could go so far as to agree that Tennessee law requires it. The only two you point to are the nets and the side retention barrier. And when he points to the nets, he says, if they thought it would. And then the side retention barrier isn't spelled out. It's just a vague reference. Well, in his deposition testimony, which is, this is why you have Daubert hearings and we didn't have one here, and it easily could have happened considering that this ruling comes down 11 days before trial. All those things can be fleshed out. But in his deposition, if you read it, he actually goes through a number of different ways in which you can keep these hands and arms in the vehicle, even tethering to the T-bar if you want this dune buggy fill. That's one option. You can actually design the roll cage, he says, in a way that is still effective but that you eliminate any possible risk here. Or you could design it as the CPSC had once proposed in such a way where you reconfigure the whole vulnerability of rollover and essentially a whole redesign. And that's not acceptable because it's not as fun. And this is about adrenaline and having fun. So I believe Dr. Kress passed his muster. I believe the district court just overlooked the opinions and got it grossly wrong. And the trial was, you know, Martin was hamstrung and unable to meet his burden for that reason. Thank you. Any further questions? No. All right. Thank you, counsels. The case will be submitted.